UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIRA INTERNATIONAL FOODS INC.,

          Plaintiff,

    vs.

NILE COMPANY FOR FOOD INDUSTRIES,

         Defendant.

08 Civ. 5825 (GBD)

WALEED EL SHERBINI DECLARATION

I, WALEED ELSHERBINI, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

**Introduction**

1.    I am employed by Defendant Nile Company for Food Industries (hereinafter "Nile" or "Defendant") as its Export Director. In that capacity, I am familiar with the facts set forth herein. I submit this declaration in opposition to the order to show cause filed by Mira International Foods, Inc. (hereinafter "Mira Foods" or "Plaintiff").

2.    While the papers submitted in support of the order to show cause attempt to portray Plaintiff as the small helpless victim of the big bad Defendant, the truth could not be more different.

3.    For example, Plaintiff argues that Defendant is placing a stranglehold on Plaintiff's business in an attempt to force Plaintiff to agree to a buyout of the contract between the parties.

4.      Interestingly, Plaintiff fails to mention in its moving papers either that: (a) Plaintiff owes Defendant in excess of $1 million; or (b) that the subject contract was terminated, effective May 30, 2008, after Plaintiff was given 120 days notice to cure its breach by making its payments that were past due.  Annexed hereto as Exhibit "A" is a summary prepared by Defendant's accounting department showing: (a) the invoices totaling $1,290,362.89 owed; and (b) the invoices that are past due (totaling $1,011,270.44) (the amount owed differs from the amount past due because the parties' agreement gives Plaintiff generous payment terms).    Annexed hereto as Exhibit "B" is the notice of termination from Defendant to Plaintiff, dated May 30, 2008.

5.      Thus, while at first blush this case appears to be brought by a Plaintiff seeking a protective shield from the Court, in fact Plaintiff herein is asking this Court to provide it with a sword to either: (a) pressure Defendant into paying Plaintiff millions of dollars to buy Plaintiff out of a (previously terminated) contract; or (b) reinstate a terminated contract (despite Plaintiff's failure to pay Defendant over $1 million that is past due pursuant to the terms of said contract) and simultaneously reverse the first significant increase in prices in 10 years, which was implemented pursuant to the terms of said contract. See Exhibit "J" to the Declaration of Mark Awadalla, sworn to on June 26, 2008 (hereinafter "Mark Awadalla Dec.") for an example of Plaintiff's attempts to secure a buyout, which attempts continue to this day.

**Plaintiff's End Run Around the Agreement's Arbitration Clause**

6.      Plaintiff concedes in its moving papers that the parties are subject to an arbitration clause contained in their contract and in an amendment thereto.  Plaintiff's Memorandum of Law, p. 9.

7.    However, Plaintiff has failed to comply with the requirements of said arbitration clause despite its apparent dissatisfaction with: (a) an alleged improper price increase by Defendant; (b) alleged sales by Defendant to other parties in Plaintiff's territory; (c) alleged improper solicitation by Defendant of North American customers on its website; and (d) alleged improper solicitation by Defendant of North American customers at trade shows. Mark Awadalla Dec. ¶¶ 38 – 65; Declaration of Joseph Awadalla, sworn to on June 26, 2008 (hereinafter "Joseph Awadalla Dec."), ¶¶ 6 - 10.

8.    The subject arbitration clauses require the parties to first proceed to non-binding arbitration in Egypt.    Exhibit "A" to Mark Awadalla Dec. at ¶ 7.01; Exhibit "D" at § 1(e).

9.    This dispute resolution procedure commences when either party "gives full and adequate notice that it would like to proceed with Arbitration." Id.

10.    No such notice has been generated by Plaintiff.

11.    Upon information and belief, the reason why Plaintiff has failed to trigger the arbitration procedure despite its numerous allegations of breaches of contract by Defendant is that this order to show cause was presented to this Court in a thinly disguised attempt to pressure Defendant to pay Plaintiff an exorbitant fee for the buyout of the subject agreement (that has already been terminated in accordance with its terms).  Mark Awadalla Dec. Exhibit "J."

12.    In fact, although Plaintiff claims that it was Defendant who made an initial overture to Plaintiff regarding buying Plaintiff out of the subject agreement, this is a classic example of the pot calling the kettle black because it was Plaintiff who initially raised the subject of a buyout with us (just as Plaintiff is the pot is calling the kettle – Defendant – black when it

alleges that we are trying to pressure him into accepting a buyout of the subject agreement). See Mark Adawalla Dec. ¶¶ 35, 66 – 69.

13.    Specifically, the first time that I heard or saw anything concerning a buyout of Plaintiff's rights under the subject agreement was when I received a telephone call from my attorney in which my attorney advised me that he had been approached by Mark Adawalla with regard to a potential buyout and that Mark Adawalla had hired a Certified Valuation Analyst to place a value on the agreement. See Mark Awadalla Dec. Exhibit "J."

14.    Since that telephone call, Mark Adawalla has repeatedly called me to inquire as to whether Defendant's board of directors had made a decision with respect to his proposed buyout.

15.    Moreover, when I saw Mark Adawalla at a trade show this week, he again asked me if the Defendant's board of directors had made a decision with respect to his proposed buyout. He also called me today to discuss his willingness to be reasonable about the terms of such a buyout.

### Defendant's Products Are Not Unique (Defendant Does Not Have a Monopoly).

16.    Plaintiff's entire motion, brought by order to show cause, is premised upon the fact that either Defendant's products are unique or that Defendant has a monopoly.  Mark Awadalla Dec., ¶¶ 70 - 74.

17.    Simply put, if Defendant's products are not unique and Defendant does not have a monopoly, then Plaintiff will not suffer irreparable harm if the requested relief is not granted (since Plaintiff can enter into business relationships with other manufacturers to supply Plaintiff with nectars, juices, etc.).

18.     However, Defendant's products are not unique and Defendant does not have a monopoly.

19.     In fact, Plaintiff conceded that Defendant's products are not unique when Mark Adawalla stated that Plaintiff is currently buying from other suppliers.  Mark Awadalla Dec. ¶ 74.

20.     Plaintiff also conceded that Defendant's products are not unique when Mark Adawalla wrote an email to me on December 27, 2007, in which he stated that Defendant's "costs per product are approximately 30% higher than other producers who are currently doing business with us." A copy of this email is annexed hereto as Exhibit "C."

21.     Plaintiff again conceded this fact when Mark Adawalla wrote an email to me on August 25, 2006, in which he said that he wanted Defendant to coordinate shipments to Plaintiff's customers who were simultaneously buying our products from Plaintiff and buying our competitor's (i.e., Greenland's) products from Plaintiff.  A copy of this email is annexed hereto as Exhibit "D."

22.     All of these admissions by Plaintiff that it has used other suppliers are also admissions that Plaintiff has flagrantly breached the best efforts clause contained in the subject exclusivity agreement.  See Mark Awadalla Dec. Exhibit "D" at ¶ 2.02.

### Plaintiff's Motion is Premised Upon Misstatements, Mischaracterizations, and Falsehoods.

23.     Plaintiff's motion, brought by order to show cause, is premised upon numerous misstatements, mischaracterizations, and falsehoods.

24.     For example, Plaintiff alleges that Defendant was actively soliciting North American customers when Defendant attended a trade show in New York City this week.   Mark Awadalla Dec., ¶¶ 52 - 57.

25.     In fact, the trade show that I participated in this week on behalf of Defendant was attended by potential customers from all over the world.

26.     For example, while at the trade show, I spoke to potential customers from (among other places) China and the Dominican Republic (2 countries that are not covered by Plaintiff's exclusive distributorship agreement).

27.     Plaintiff also alleges that Defendant breached the subject agreement by: (a) failing to enter into good faith arms-length negotiations prior to increasing Defendant's prices; (b) "unilaterally and abruptly" imposing a 25 percent price increase in March 2008; and (c) charging "well above industry pricing for similar product." Mark Awadalla Dec., ¶¶ 59 - 64.

28.     These 3 statements are blatantly false.  First, pursuant to the terms of the agreement, price increases do not become effective until 90 days after notice from Defendant to Plaintiff. Mark Awadalla Dec., Exhibit "A" at ¶ 3.01.  Thus, it would have been impossible for Defendant to have "abruptly" increased its prices.

29.     Second, as required by the agreement, the parties entered into good faith negotiations during the 90 days following the notice of price increase.  Annexed hereto as Exhibit "E" is an email from Defendant to Plaintiff, dated December 9, 2007, notifying Plaintiff of the price increase.  Although this email erroneously stated that the price increase would be effective January 1, 2008, I subsequently advised Plaintiff that the price increase would not be effective until 90 days after the notice of price increase was sent.

30.    Collectively annexed hereto as Exhibit "F" are the email messages between Plaintiff and Defendant that constitute their good faith negotiations regarding the notice of price increase. As part of said negotiations, Defendant provided Plaintiff with Defendant's cost information (at Plaintiff's request) even though providing such information was not required by the terms of the contract (Defendant's cost information has been removed from Exhibit "F" due to its confidential and proprietary nature). Thus, there is no basis to allege that the price increase was "unilateral" or that Defendant failed to participate in the required good faith negotiations prior to the effective date of the price increase.

31.    Third, the Declaration fails to provide any evidence in support of its bald and conclusory allegation that Defendant is charging "exorbitant" prices "well above industry pricing for similar product." Mark Awadalla Dec., ¶ 64. Such evidence, if it existed, would have been easily accessible to Mark Adawalla, given his years of experience in our industry (and his admissions, discussed above, that Defendant regularly purchases products from other suppliers).

32.    In fact, the prices that Defendant alleges are well above industry pricing are in line with the prevailing prices in Egypt, as required by the terms of the agreement. Annexed hereto as Exhibit "G" is a spreadsheet that I prepared showing the prevailing prices in Egypt and the prices for Plaintiff (after the price increase).

33.    Although Plaintiff concedes (Mark Awadalla Dec., ¶ 61) that Defendant's prices "had not changed for quite some time," Plaintiff fails to advise the Court that: (a) in the ten years since the execution of the contract, there had not been any material price increases; (b) during the same period, the Egyptian Pound's value was cut in half; (c) during the same period, inflation in the United States of America was more that 25% (2.5% per year for 10

years); and (d) during the same period, the cost of Defendant's raw materials increased by more than 50%.

34.     Plaintiff also alleges that Defendant has sold its products to a New Jersey distributor in violation of the terms of the agreement.  Mark Awadalla Dec., ¶ 47.  In support of this allegation, he attaches an exhibit to his declaration that allegedly sets forth entries from a bill of lading provided by a website known as www.piers.com.  Since this shipment is unfamiliar to me (as Defendant's Export Manager), I conducted a search to determine if such a shipment was made.  My office's search of our records revealed no evidence of such a shipment.  When I contacted the shipper, I was advised that they delete such information three months after shipment (and, thus, could not confirm or deny the existence of such a shipment).

35.     Plaintiff also alleges that Defendant is "actively soliciting quotations from companies who may be interested in importing Nectars into the United States."  Mark Awadalla Dec., ¶ 51.  Plaintiff draws this conclusion based upon the fact that he was able to select "United States" as the "Destination Country" on Defendant's website.  Id.  However, Defendant requires prospective customers to identify destination countries so that it will not sell its products in violation of exclusivity agreements that Defendant has entered into (including, but not limited to, Defendant's agreement with Plaintiff).

36.     In addition to the above-described inaccuracies, misstatements, and falsehoods, the Declaration of Mark Adawalla is internally inconsistent.  Specifically, when he wants to argue that the subject contract was a valuable asset of the Defendant (e.g., when he attempts to explain why Defendant would agree to extend the term of the subject agreement from 10 years to 25 years in exchange for no consideration), he does so.  Mark Awadalla Dec., ¶ 24.

37.     However, when he wants to argue that the subject contract was a significant liability of the Defendant (e.g., when he attempts to explain why Defendant would have initiated discussions regarding Defendant buying Plaintiff out of the agreement), he does so (even though this is in direct conflict with his previous argument). Mark Awadalla Dec., ¶¶ 35, 66 - 67.

38.     Lastly, although the entire Declaration of Joseph Adawalla is devoted to a single incident of an alleged breach in Florida (where Defendant's product was in a store under a brand name other than Mira), the declaration fails to advise this Court that this transaction was reversed (even though Plaintiff is well aware of this fact). Annexed hereto as Exhibit "H" is a bill of lading showing the subject merchandise being taken back from Florida and being shipped to Italy.

**Plaintiff's Bad Faith Actions**

39.     During the course of Defendant's business dealings with Plaintiff, Plaintiff has unilaterally taken credits against its balances due (with respect to the majority of shipments from Defendant to Plaintiff) for alleged defective products that Plaintiff received from Defendant.

40.     On two occasions, Defendant retained the services of an independent inspection firm to confirm or deny the validity of Plaintiff's claims that Defendant's products were defective (i.e., that the juices had separated into pulp and juice). On both occasions, the independent inspection firm concluded that Plaintiff's claims regarding defective products were baseless (i.e., that such separation is standard in such products, that the separation can be corrected by simply shaking the juice bottle, and that the bottles were clearly labeled "Shake Well").

Collectively annexed hereto as Exhibit "I" are the two reports prepared by Inspectorate, one dated October 25, 2007 and the other dated November 8, 2007.

41.    Another example of bad faith actions by Plaintiff is when, shortly before Defendant was purchased by Haykala Investment Managers ("Haykala"), Plaintiff fraudulently entered into purported amendments to the subject agreement by having these amendments signed by individuals who would be leaving Defendant's employ after the purchase of Defendant by Haykala.

42.    Defendant will attempt to establish at the arbitration of this matter that the individuals who signed these amendments on behalf of Defendant were either: (a) bribed in exchange for their willingness to sign the amendments; or (b) friends of Mark Adawalla who signed the amendments without corporate authorization, outside the scope of their employment, and in violation of their fiduciary duties to Defendant.

43.    Simply put, it would have made no business sense for Defendant to have, in exchange for no consideration: (a) give Plaintiff "sole discretion" regarding Defendant's right to inspect Plaintiff's books and records – a right contained in the original contract; (b) give Plaintiff intellectual property rights that Defendant maintained in the original contract; and (c) extend the term of the exclusivity agreement from 10 to 25 years.  Mark Awadalla Dec., Exhibit "D."

44.    In distinct contrast to Plaintiff's bad faith actions, Defendant's notice of termination of the agreement stated that Defendant was willing to continue supplying Plaintiff with Defendant's products in order for Plaintiff to transition their business to another supplier. Annexed hereto as Exhibit "B" is the notice of termination from Defendant to Plaintiff, dated

May 30, 2008.  This offer was conditioned upon Plaintiff's payment of all overdue and current invoices and Plaintiff's payment of all future invoices in advance.

## DECLARATION

I hereby declare under penalty of perjury that the forgoing statements are true and correct.

_____

WALEED EL SHERBINI

Dated:  New York, New York
       July 3, 2008

**CLIENT: Mira**  **Date: 03/07/2008**  **Account Statement**

| S/N | Invoice No. | Invoice Amount | Date of Shipping | B/L Date | Date of Payment 60 days fm B/L date | Amount Due 40% | No. of exceeded Days | Date of Payment 90 days fm B/L date | Amount due 60% | No. of exceeded Days |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MIFI/05/25 | $3,405.73 | 12&13&14/06/2005 | 20/06/2005 | 19/08/2005 | $1,362.29 | 1034 | 18/09/2005 | $2,043.438 | 1005 |
| 2 | MIFI/05/32 | $4,693.09 | 21/07/2005 | 25/07/2005 | 23/09/2005 | $1,877.24 | 1000 | 23/10/2005 | $2,815.854 | 970 |
| 3 | MIFI/05/46 | $436.00 | 31/08/2005 | 05/09/2005 | 04/11/2005 | $174.40 | 999 | 04/12/2005 | $261.600 | 929 |
| 4 | MIFI/05/47 | $4,095.11 | 03&04/09/2005 | 12/09/2005 | 11/11/2005 | $1,638.04 | 952 | 11/12/2005 | $2,457.066 | 922 |
| 5 | MIFI/05/94 | $1,578.00 | 21/12/2005 | 30/12/2005 | 28/02/2006 | $631.20 | 843 | 30/03/2006 | $946.800 | 813 |
| 6 | 24 | $5,046.00 | 25/02/2006 | 02/03/2006 | 01/05/2006 | $2,018.40 | 782 | 31/05/2006 | $3,027.600 | 753 |
| 7 | 99+100+101+102 | $27,070.10 | 11/08/2006 | 18/08/2006 | 17/10/2006 | $10,828.04 | 616 | 16/11/2006 | $16,242.060 | 587 |
| 9 | 66 | $1,285.16 | 23/08/2007 | 30/08/2007 | 29/10/2007 | $514.06 | 244 | 28/11/2007 | $771.096 | 215 |
| 10 | 81 | $40,635.00 | 30/10/2007 | 05/11/2007 | 04/01/2008 | $16,254.00 | 178 | 04/02/2008 | $24,381.000 | 149 |
| 11 | 82 | $30,998.10 | 30/10/2007 | 06/11/2007 | 06/01/2008 | $12,399.24 | 178 | 04/02/2008 | $18,598.860 | 149 |
| 12 | 83 | $34,536.70 | 31/10/2007 | 07/11/2007 | 06/01/2008 | $13,814.68 | 177 | 05/02/2008 | $20,722.020 | 148 |
| 13 | 84 | $16,669.45 | 31/10/2007 | 07/11/2007 | 06/01/2008 | $6,667.78 | 177 | 05/02/2008 | $10,001.670 | 148 |
| 14 | 85 | $20,317.50 | 14/11/2007 | 21/11/2007 | 20/01/2008 | $8,127.00 | 163 | 19/02/2008 | $12,190.500 | 134 |
| 15 | 86 | $30,313.00 | 14/11/2007 | 21/11/2007 | 20/01/2008 | $12,125.20 | 163 | 19/02/2008 | $18,187.800 | 134 |
| 16 | 87 | $12,357.00 | 19/11/2007 | 26/11/2007 | 25/01/2008 | $4,942.80 | 158 | 24/02/2008 | $7,414.200 | 129 |
| 16 | 88 | $50,793.75 | 20/11/2007 | 27/11/2007 | 26/01/2008 | $20,317.50 | 157 | 25/02/2008 | $30,476.250 | 128 |
| 18 | 89 | $50,793.75 | 20/11/2007 | 27/11/2007 | 26/01/2008 | $20,317.50 | 157 | 25/02/2008 | $30,476.250 | 128 |
| 23 | 90 | $50,793.75 | 20/11/2007 | 27/11/2007 | 26/01/2008 | $20,317.50 | 157 | 25/02/2008 | $30,476.250 | 128 |
| 24 | 91 | $50,793.75 | 21/11/2007 | 28/11/2007 | 27/01/2008 | $20,317.50 | 156 | 26/02/2008 | $30,476.250 | 127 |
| 25 | 92 | $35,108.20 | 21/11/2007 | 28/11/2007 | 27/01/2008 | $14,043.28 | 156 | 26/02/2008 | $21,064.920 | 127 |
| 26 | 93 | $39,569.75 | 21/11/2007 | 28/11/2007 | 27/01/2008 | $15,827.90 | 149 | 26/02/2008 | $23,741.850 | 118 |
| 27 | 94 | $10,158.75 | 06/12/2007 | 13/12/2007 | 11/02/2008 | $4,063.50 | 142 | 12/03/2008 | $6,095.250 | 111 |
| 28 | 1 | $24,949.45 | 17/12/2007 | 24/12/2007 | 22/02/2008 | $9,979.78 | 131 | 23/03/2008 | $14,969.670 | 100 |
| 29 | 2 | $10,939.30 | 24/01/2008 | 27/01/2008 | 27/03/2008 | $4,375.72 | 96 | 26/04/2008 | $6,563.580 | 67 |
| 30 | 3 | $9,330.00 | 27/01/2008 | 27/01/2008 | 27/03/2008 | $3,732.00 | 96 | 26/04/2008 | $5,598.000 | 67 |
| 31 | 4 | $57,304.45 | 20/01/2008 | 27/01/2008 | 27/03/2008 | $22,921.78 | 96 | 26/04/2008 | $34,382.670 | 67 |
| 32 | 5 | $10,158.75 | 20/01/2008 | 27/01/2008 | 27/03/2008 | $4,063.50 | 95 | 26/04/2008 | $6,095.250 | 66 |
| 33 | 6 | $59,773.50 | 21/01/2008 | 28/01/2008 | 28/03/2008 | $23,909.40 | 95 | 27/04/2008 | $35,864.100 | 66 |
| 34 | 7 | $31,350.70 | 21/01/2008 | 28/01/2008 | 28/03/2008 | $12,540.28 | 95 | 27/04/2008 | $18,810.420 | 66 |
| 35 | 8 | $7,762.25 | 23/01/2008 | 30/01/2008 | 29/03/2008 | $3,104.90 | 93 | 29/04/2008 | $4,657.350 | 65 |
| 36 | 9 | $26,078.80 | 24/01/2008 | 31/01/2008 | 31/03/2008 | $10,431.52 | 93 | 30/04/2008 | $15,647.280 | 63 |
| 37 | 10 | $50,793.75 | 27/02/2008 | 05/02/2008 | 02/04/2008 | $20,317.50 | 88 | 03/05/2008 | $30,476.250 | 58 |
| 38 | 11 | $72,940.35 | 27/02/2008 | 20/02/2008 | 27/04/2008 | $29,176.14 | 66 | 27/05/2008 | $43,764.210 | 36 |
| 39 | 12 | $39,849.60 | 03/03/2008 | 03/03/2008 | 02/05/2008 | $15,939.84 | 61 | 01/06/2008 | $23,909.760 | 32 |
| 40 | 13 | $48,129.60 | 09/03/2008 | 03/03/2008 | 04/05/2008 | $19,251.84 | 59 | 03/06/2008 | $28,877.760 | 30 |
| 41 | 14 | $83,884.50 | 16/03/2008 | 16/03/2008 | 15/05/2008 | $33,553.80 | 48 | 14/06/2008 | $50,330.700 | 19 |
| 42 | 15 | $73,401.50 | 10/03/2008 | 17/03/2008 | 15/05/2008 | $29,360.60 | 47 | 15/06/2008 | $44,040.900 | 18 |
| 39 | 16 | $72,011.75 | 16/04/2008 | 23/04/2008 | 22/06/2008 | $28,804.70 | 11 | 22/07/2008 | $43,207.050 | There Are About 1day For Payment |
| 40 | 17 | $25,200.00 | 23/04/2008 | 22/06/2008 | 14/07/2008 | $10,080.00 | 1 | 13/08/2008 | $15,120.000 | There Are About 1day For Payment |
| 41 | 18 | $78,332.00 | 06/05/2008 | 25/07/2008 | 28/06/2008 | $31,332.80 | There Are About 1Day For Payment | 24/08/2008 | $46,999.200 | There Are About 1Day For Payment |
| 42 | 19 | $10,350.00 | 15/05/2008 | 26/05/2008 | 01/08/2008 | $4,140.00 | There Are About 3Day For Payment | 31/08/2008 | $6,210.000 | There Are About 3Day For Payment |
| 43 | 17 | $25,987.50 | 25/07/2008 | 02/06/2008 | 01/08/2008 | $10,395.00 | There Are About 3Day For Payment | 05/09/2008 | $15,592.500 | There Are About 3Day For Payment |
| 44 | 18 | $25,987.50 | 25/05/2008 | 07/06/2008 | 06/08/2008 | $20,790.00 | There Are About 8/day For Payment | 05/09/2008 | $15,592.500 | There Are About 8/day For Payment |
| 45 | 19 | $51,975.00 | 31/05/2008 | 07/06/2008 | 07/06/2008 | $20,790.00 | There Are About 1/Day For Payment | 05/09/2008 | $31,185.000 | There Are About 1/Day For Payment |
| **Total Amount owes** | | **$1,290,362.89** | | | **Total Amount Overdue** | **$516,145.16** | **$439,407.36** | | **$774,217.734** | **$571,863.08** |

**Total Amount Overdue $1,011,270.44**

## Waleed El Sherbini

**From:** wsherbini@enjoy-eg.com
**Sent:** 30 م ٨:٥٥ ٢٠٠٨ ،مايو  5/30/08
**To:**   Mark Awadalla
**Cc:**   El Jim; ammar_akel@nablilaw.com; kborollossy@enjoy-eg.com

Dear Mark;

This email will serve as Nile's notice of termination of the Distribution Agreement Between Mira and Nile pursuant to Article V section 5.01(a). Mira  was placed on notice as of January 31, 2008 to  pay all its overdue invoices and to strictly comply with the payment terms of the contract. Despite this notice, Mira has failed to pay its overdue invoices within the 120 day period.

In the interim, Nile will continue to supply Mira for a limited time in order for you to transition your business to another company. However, we will only supply you with goods on the condition that Mira pays all its overdue invoices and current invoices.

All future orders must be paid in advance.

If you have any questions feel free to email me. Otherwise we can talk on Monday

Thank you
Waleed

## Waleed El Sherbini

| | |
|---|---|
| **From:** | Mark Awadalla [mark.awadalla@mirafoods.com] |
| **Sent:** | 27 ديسمبر، ٢٠٠٧ م ٠٥:٤٥    12/27/07 |
| **To:** | 'Waleed El Sherbini' |
| **Cc:** | 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla' |
| **Subject:** | RE: 2008 prices |

Dear Waleed,

I will respond to the cost preparation by the end of this week.

We cannot confirm the price increase because of the following:

1. The cost calculations at first glance seem incorrect; some of the costs appear too high or inflated.
2. The costs per product are approximately 30% higher than other producers who are currently doing business with us.
3. It does not provide us with enough opportunity to advise us of our customers of any price increase. The first you notified me of the price increase was in early December when we met in Egypt.

Please note that the order we placed for tetra and glass are for previous pricing only.

Best regards,

Mark

---

**From:** Waleed El Sherbini [mailto:wsherbini@enjoy-eg.com]
**Sent:** Thursday, December 27, 2007 5:05 AM
**To:** 'Mark Awadalla'
**Subject:** 2008 prices
**Importance:** High

Dear Mark,
Reference to above mentioned subject, please be informed that I didn't receive from you confirmation of the prices 08 despite you have receive it with cost sheet since your last visit in Cairo.bearing in mind that the prices will be effective on January 1st.
Your confirmation is highly appreciated
Regards
Waleed

**Waleed El Sherbini**

From:    Mark Awadalla [mark.awadalla@mirafoods.com]
Sent:    25 ص ٢٠٠٦، أغسطس ١٢:٣٥ ص 8/25/2006
To:      'Waled El Sherbii'; Waleed El Sherbini
Cc:      'dalia adly'; elrafaiey@yahoo.com; 'Kareem El-Borollossy'; kborollossy@enjoy-eg.com; 'Marwa
         Farid (2)'; 'MARWA FARID'; 'Mohamed Rizk'; 'Nagwa Hisham'; 'Nagwa Hisham'
Subject: Discussion Points for Meeting in Egypt

Dear Waled,

Please see the below discussion points for my trip to Egypt. Please note that we have addressed some of these issues previously, however, they are recurring, thus, we must address them until they are fully resolved. I look forward on making progress on all these points.

Thank you.

## EGYPT TRIP SEPTEMBER 6 - 16, 2006

ENJOY
   a) **Quality Control Concerns**
      i) Bottling line concerns
         (1) Separation of product continues – see pictures and videos sent. This separation occurs in the following products: Mango, Mango Banana, Guava and Apricot.
         (2) Bottle capping remains an issue.
            (a) Several Lot No.'s were shown to have popped caps. See email to Waled dated August 17, 2006 and prior video emails.
            (b) No satisfactory answer as to final resolution of this problem has been provided to date.
            (c) Discuss plastic safety seal on cap.
         (3) Oxidation of the product appears to continue in part because of capping issue.
         (4) Labeling is still considerably problematic – we need to determine if we can get a stronger label with laminate finish. Please discuss this matter with George Alber and Pacman.
         (5) Generally we need to know who is responsible for managing the bottle line and who replaced Nagla as the bottling line manager. The continuing problems from that line are unacceptable.
      ii) We need to create a scaling mechanism for discounting product that is coming defective and the scale should be from a certain percent to a total refund of product that is shown to have quality control deficiencies. The cost of quality control concerns to us is very high.

Specifically recalling and manage returns is presents exorbitantly high costs to us in the USA.

   iii) Hiring Futura labs to confirm that the process and formulation batching is being adhered to properly.

   iv) Timing of Quality Control Manager?

b) **New Mira Bottles**

   i) New Mira bottle test run.

   ii) Confirm test run date on September 10, 2006 for One Liter.

   iii) Confirm test run date on September 12, 2006 for 200ml.

c) **Inventory Management / Stock Status** –

   i) Review Stock Status Report provided to us by Dalia Adly in conjunction with agreed to amounts discussed during our visit in mid-June. There needs to be economic accountability for product shortages. We have to figure out a mechanism to create accountability because we are losing considerable money because of such shortages. Our request to create accountability is based on the following:

     (1) *3/4/06 - We were advised that inventory would be built up to 80% of monthly requirements by the end of March 2006.*

     (2) *6/12/06 - We were advised that inventory would be built up to 80% of monthly requirements by the end of July 2006.*

     (3) *Both have not occurred and we are losing tremendous sale opportunities.*

   ii) Review projections for remainder of year and determine whether Enjoy can meet stock status.

   iii) Confirm availability of Mango Pulp for the year.

   iv) Confirm empty bottle inventory for balance of the year. We require approximately 400,000 bottles of One Liter and 1,000,000 bottles of 240ml

d) **Open Account Status** – Mahmoud Mahmoud to prepare a schedule of payments due for all shipments that left Egypt as of August 31, 2006. Reconcile and obtain certification of accounts due as of such date.

e) **New Flavors**

   i) Mango Banana and Mango Colada

     (1) Paper to be confirmed with Tetra Prior to Mark's arrival in Egypt

     (2) Confirm

     (3) Confirm when initial order of tetra will take place for 80,000 packs of each flavor for One Liter

     (4) Limit initial launch to One Liter

   ii) Discuss Timing, Pricing and Guarantees Associated with Launch of Guava Strawberry and Orange Carrot

f) **UPC's for outer cartons** – Mark to finalize outer carton UPC's for Dalia prior to arriving in Egypt.

g) **Consolidation of shipments with Greenland** –

   i) We need to determine a way to consolidate drop shipments to satisfy customers who want to drop ship products produced by Greenland e.g. for now, Strawberry Banana.

h) **Better communication is a must** – We still do not receive any notice when products are short

or when there is a production defect or delay.  We need to speak weekly on a telephone conference – perhaps video conference.  *I will provide the video conference details and equipment upon arrival in Egypt.*

Mark R. Awadalla

Mira International Foods, Inc.

1200 Tices Lane, Suite 203

East Brunswick, NJ 08816

Tel.: 732.846.5410

Cell: 201.233.5256

Fax: 815.572.0833

**Waleed El Sherbini**

| | |
|---|---|
| **From:** | Waleed El Sherbini [wsherbini@enjoy-eg.com] |
| **Sent:** | Sunday, December 09, 2007 10:25 AM |
| **To:** | 'Mark Awadalla' |
| **Subject:** | prices 08 |
| **Attachments:** | mira prices 08.xls |

Dear Mark,

Re our meeting today concerning above mentioned subject, please find attached our new prices which will be effective January 1st,2008

Kind regards,

Waleed

1

|  | MIRA PRICES 08 |
| --- | --- |
| **SKU'S** | PRICE/CARTON |

**1TL T.PAK**

| Mango | 8 |
| --- | --- |
| Cocktai | 7.50 |
| Guava | 7.50 |
| P.Guava | 7.50 |
| mangocolada | 7.50 |
| mangobanana | 7.50 |
| Pear | 7.50 |

**200ml t.pak**

| Mango | 4.50 |
| --- | --- |
| Cocktail | 4.25 |
| Orange | 4.25 |
| Guava | 4.25 |
| P.Guava | 4.25 |

**1lt. Bottle**

| mango | 4.25 |
| --- | --- |
| guava | 4.00 |
| p.guava | 4.00 |
| apricot | 4.00 |
| pear | 4.00 |
| mangocolada | 4.25 |
| mangobanana | 4.25 |

**250ml bottlex20**

| mango | 4.5 |
| --- | --- |
| guava | 4.25 |
| p.guava | 4.25 |
| apricot | 4.25 |
| pear | 4.25 |
| mangocolada | 4.50 |
| mangobanana | 4.50 |

## Waleed El Sherbini

| | |
|---|---|
| **From:** | Waleed El Sherbini [wsherbini@enjoy-eg.com] |
| **Sent:** | ديسمبر، ٢٠٠٧ ١١:٠٢ ص 13    *12/13/2007* |
| **To:** | 'Mark Awadalla' |
| **Cc:** | 'kborollossy@enjoy-eg.com'; 'Joseph Awadalla'; 'Pancy Awadalla'; 'Mariam Gandour'; 'Ramses Awadalla'; 'trahman@enjoy-eg.com' |
| **Subject:** | mira cost |

| Tracking: | Recipient | Read |
|---|---|---|
| | 'Mark Awadalla' | |
| | 'kborollossy@enjoy-eg.com' | |
| | 'Joseph Awadalla' | |
| | 'Pancy Awadalla' | |
| | 'Mariam Gandour' | Read: 13/12/2007 07:26 م |
| | 'Ramses Awadalla' | |
| | 'trahman@enjoy-eg.com' | Read: 13/12/2007 11:15 ص |
| | 'Jim El Nabli, Esq.' | Read: 13/12/2007 07:22 م |
| | 'jraclao@nablilaw.com' | |

Dear Mark,
Re above mentioned subject, please find attached copy of your cost calculation **vs**. ours.
It seems that you missed some figures which will appear on our calculation. Also you missed the cost of rest products such as Mangobanana, mangocolad, etc. all are available we can discuss during our meeting today.

Kind regards,

*Waleed el Sherbini*
*Export Director*

**The Nile Company for Food Industries (Enjoy)**

*Address: Kombera, Imbaba, Giza, Egypt*

*Tel: + (202) 890 0401 – 6*
*Fax: + (202) 890 0408 – 9*
*Mobile: + (2010) 9800300*
*E-mail: wsherbini@enjoy-eg.com*

## Waleed El Sherbini

| | |
|---|---|
| **From:** | Waleed El Sherbini [wsherbini@enjoy-eg.com] |
| **Sent:** | 22 م ٤:٣٠ ٢٠٠٨، يناير   *1/22/2008* |
| **To:** | 'Mark Awadalla'; 'Waleed El Sherbii' |
| **Cc:** | 'Kareem Borollossy'; 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla' |
| **Subject:** | RE: Prices |

Hi Mark,
Thanks for your email; I will review it with costing dep. and let you know.
Please be informed that I stopped using link.net
Thanks
Waleed

---

**From:** Mark Awadalla [mailto:mark.awadalla@mirafoods.com]
**Sent:** Tuesday, January 22, 2008 4:19 PM
**To:** 'Waleed El Sherbini'; 'Waleed El Sherbii'
**Cc:** 'Kareem Borollossy'; 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla'
**Subject:** RE: Prices

Hi Waleed,

I sent the attached email to you on Sunday discussing this point.  I sent it to your link.net address.  Thanks.

Regards,

Mark

---

**From:** Waleed El Sherbini [mailto:wsherbini@enjoy-eg.com]
**Sent:** Tuesday, January 22, 2008 9:15 AM
**To:** 'Mark Awadalla'; 'Waleed El Sherbii'
**Cc:** 'Kareem Borollossy'
**Subject:** RE: Prices

Hi Mark,
Hope this mail fined you well.
Re above mentioned subject, still waiting for your feedback, appreciates to expedite.
Regards
Waleed

---

**From:** Mark Awadalla [mailto:mark.awadalla@mirafoods.com]
**Sent:** Monday, January 14, 2008 4:34 PM
**To:** 'Waleed El Sherbini'; Waleed El Sherbi
**Cc:** Kareem Borollossy
**Subject:** Prices

Dear Waleed,

I have been tied up; but should get back to you with pricing issues later this week.  I do apologize for the delay.

Many thanks.

Regards
Waleed

---

**From:** Mark Awadalla [mailto:mark.awadalla@mirafoods.com]
**Sent:** Monday, January 14, 2008 4:34 PM
**To:** 'Waleed El Sherbini'; Waleed El Sherbii
**Cc:** Kareem Borollossy
**Subject:** Prices

Dear Waleed,

I have been tied up; but should get back to you with pricing issues later this week.  I do apologize for the delay.

Many thanks.

 cid:image001

Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

**From:** Mark Awadalla [mark.awadalla@mirafoods.com]
**Sent:** 20 م 02:37 2008 ,يناير   *1/20/2008*
**To:** Waleed El Sherbii
**Cc:** Kareem Borollossy; 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla'
**Subject:** Prices for 2008
Dear Waleed,

I hope this email finds you well.   Please note that I have attached the following comments to your prices; which are attached hereto. I am happy to further discuss these prices and finding an accommodation with you when I come to Egypt during the first week in February.  For your convenience,  all references to prices, unless otherwise noted, are in U.S. dollars.

1. **Comments - Applicable Per All Flavors for Review:**

   a.   You have the cost of mango pulp at 5,250 The cost of Mango Pulp is less than 5,000 L.E. in part because if it is purchased in the market you get 5,000 L.E. in the beginning of the season; if you produce it the cost is less. – **This adds approximately $0.09 per case.**

   b.   Although the cost of sugar sometimes jumps to 2,700 to 2,800L.E. for one month or so – average cost though is 2,550 L.E. for the year. **This adds approximately $0.04 per case.**

   c.   The one liter tetra pack per unit is .165 with all tabs, strips recaps, with landed cost to factory.  I have reviewed tetra invoices previously.  Your accounting team double counted the cost strip recaps and aluminum tabs etc. **This added approximately $0.39 per case.**

   d.   The Beta Carotene weight is misstated.  We use only 25 grams per ton; you have us listed as using 250 grams per ton.  Because the cost of Beta Carotene is 685,000 L.E. per ton; this has an impact on pricing. **This added approximately $0.36 per case.**

   e.   Waste for Tetra should not exceed 2% maximum – that is consistent with Tetra's maximum allowance for waste – you have 3%.  Also, you are double counting because waste is included in mark-up. **This added approximately $.03 per case**

   f.   The cost of your shrink wrap  for the outer case is $0.09 per case – the average cost in the market is $0.04 / per case. **This added approximately $.05 per case**

   g.   The rebate for export is very well known to be 7% in the market and is not included at all in your calculation rather you reference it as 5%? **This added approximately $0.45 per case**

   h.   The inland freight to the port reflects a price of $0.38 per case; it is not more than $0.19 per case. **This added approximately $.19 per case**

   i.   There is double counting on shipping – you are charging us a shipping cost in your analysis – Enjoy does not pay for Shipping to the USA. **This added approximately $.19 per case.**

2. **General Comments**

   a.   **Total Over Estimate in Cost is approximately $ 1.76 per case  on top of which you added a margin of 25%.**

   b.   **The margin for processors of mango nectar – which is very similar to margin pricing of processed commodity is not a margin of 25%.  I surveyed the market and at most the margin requirement is closer to 10-15% or a mark-up of 20 to 25%.   This does not include the 7% the government provides as a rebate for exporting.**

   c.   **Presently, we have prices firmly offered to us at $6.25 F.O.B. any port in Egypt for all flavors on the one liter and $3.50 F.O.B. on 200mL Tetra. Also, we have prices of $3.65 on the glass one liter and $3.70 on the 20x250mL small glass.  So it appears that the costing of the product may not be correct from your accounting and finance side because it is considerably more expensive than prevailing prices in Egypt.**

Again, I am willing to work with Enjoy to find an accommodation, but I ask that you revisit your prices with your accounting/finance department to account for the factors that I have described in the email. I look forward to discussing this and other matters with you when I am in Egypt.

Best regards,

Mark.



Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:  815.572.0833
Cell: 201.233.5256

**From:** wsherbini@enjoy-eg.com [mailto:wsherbini@enjoy-eg.com]
**Sent:** Thursday, January 31, 2008 4:00 PM
**To:** mark.awadalla@mirafoods.com
**Cc:** kborollossy@enjoy-eg.com; ammar_akel@nablilaw.com; nabli@earthlink.net
**Subject:** Mango Colada issue &Payment
**Importance:** High


Dear Mark,

Attached please find two reports for Mango Colada which were issued by Inspectorate; please **contact me before any action**.
Also you will find sheet showing Mira overdue debits which have reached $529k. This amount is long overdue. We have talked a lot concerning this issue but usually you tie it with the quality problem. It has nothing to do with the quality issues and must be paid immediately.

Mark,
This is to notify you that we have carefully considered our business relationship in light of our current Agreement and recent negotiations and have concluded that there will be a price increase effective as of March 9, 2008 as per the attached schedule. This increase is being made pursuant to Article III, Subparagraph 3.01 of the Agreement which states that a price change shall be made upon "ninety (90) days notice from the Manufacturer to Distributor." You have been given actual and constructive notice on December 9, 2007 during your visit to Egypt.
While your email indicating the different and added costs to the end product is appreciated, however, as discussed, and as per the Agreement, the prices are being increased to be at or nearly equal to the prevailing prices for the products in Egypt, which your cost analysis does not fully take into account.
Furthermore, this letter will also serve as notice that we are hereby requiring that Mira strictly comply with the payment terms and conditions in Article III of the Agreement.
I thank you for your business and I look forward to our continued relationship.
if you have any questions or concerns you may now contact our NY attorney:

Khaled (Jim) El Nabli, Esq.
NABLI & ASSOCIATES, P.C.
60 East 42nd Street
Suite 1338
New York, New York 10165
tel: (212) 808-0716
fax: (212) 808-0719

**Waleed El Sherbini**

| | |
|---|---|
| **From:** | Mark Awadalla [mark.awadalla@mirafoods.com] |
| **Sent:** | 18 مارس، ٢٠٠٨ ٠٨:٢٧ م   3/18/2008 |
| **To:** | wsherbini@enjoy-eg.com; 'Joseph Awadalla' |
| **Cc:** | 'El Jim'; ammar_akel@nablilaw.com |
| **Subject:** | RE: Mira Stock 12-03-2008 |

Walid,

We confirm the prices subject to our purchase order.

Thank you.

---

**From:** wsherbini@enjoy-eg.com [mailto:wsherbini@enjoy-eg.com]
**Sent:** Tuesday, March 18, 2008 2:38 PM
**To:** Joseph Awadalla; Mark Awadalla
**Cc:** El Jim; ammar_akel@nablilaw.com
**Subject:** RE: Mira Stock 12-03-2008

Dear Mark &Joe
I received your latest inquiry for P.O. No. 8072 for Mira. Please note that before I can advise you as to what can be shipped immediately, this email is a second reminder that this order is subject to the new prices in the attachment and which went into effect March 9, 2008.
I would like you to confirm your acceptance of these prices before I can process the order and answer your questions.
Thank you.
------------------------

-----Original Message-----
From: "Joseph Awadalla" <joseph.awadalla@mirafoods.com<
Date: Thu, 13 Mar 2008 07:39:36
To:"Mostafa Mohamed" <exp.enjoy@yahoo.com<
Cc:<wsherbini@enjoy-eg.com>,<wsherbini@hotmail.com>,"Mark Awadalla"
>Ýmark.awadalla@mirafoods.com<
Subject: RE: Mira Stock 12-03-2008

Dear Mostafa ،

Thank you for the report.  Please see the attached order and advise when you could send these quantities  .

You can send the 1,400 Mango 6/1 Liter against this PO  .

Thnaks

-----------------
 From: Mostafa Mohamed [mailto:exp.enjoy@yahoo.com[
Sent: Thu 3/13/2008 2:23 AM
To: Joseph Awadalla
Cc: wsherbini@enjoy-eg.com; wsherbini@hotmail.com; Mark Awadalla
Subject: Fwd: Mira Stock 12-03-2008

Dear Mr. Joe ،
How are you? I hope this message finds well .
As per your e-mail yesterday please confirm receipt .
Best Regards ،
Mostafa
Mostafa Mohamed <exp.enjoy@yahoo.com> wrote: Date: Wed, 12 Mar 2008 05:36:08
) ٠٧٠٠-ÝPDT (
From: Mostafa Mohamed <exp.enjoy@yahoo.com<
Subject: Mira Stock 12-03-2008
To: joseph.awadalla@mirafoods.com
CC: wsherbini@enjoy-eg.com, wsherbini@hotmail.com،
mark.awadalla@mirafoods.com

Dear Mr. Joe ،
It was a pleasure speaking with you earlier, thank you for taking my call .
As I mentioned by phone, please find attached file < Mira Stock 120308.xls<
Please confirm receipt .
Best Regards ،


Thanks
Mostafa
Export Specialist
The Nile Company for Food Industries " Enjoy"
Tel.: (202)38900 401-3
Fax: (202)38900 408-9
Mob:(20)107714866
E-Mail:exp.enjoy@yahoo.com
Web:www.enjoy-eg.com


----------------
ÝLooking for last minute shopping deals? Find them fast with Yahoo! Search.
>Ýhttp://us.rd.yahoo.com/evt=51734/*http://tools.search.yahoo.com/newsearch/c
ategory.php?category=shopping <


----------------
ÝLooking for last minute shopping deals? Find them fast with Yahoo! Search.
>Ýhttp://us.rd.yahoo.com/evt=51734/*http://tools.search.yahoo.com/newsearch/c
ategory.php?category=shopping <

# Waleed El Sherbini

**From:** Mark Awadalla [mark.awadalla@mirafoods.com]
**Sent:** 20 مارس، ٢٠٠٨ ٠٢:٢٧ ص   3/20/2008
**To:** wsherbini@enjoy-eg.com
**Subject:** RE: :Mira Stock 12-03-2008]

Please call me on this matter.  Thanks.

---

**From:** wsherbini@enjoy-eg.com [mailto:wsherbini@enjoy-eg.com]
**Sent:** Wednesday, March 19, 2008 8:16 PM
**To:** Mark Awadalla
**Cc:** El Jim; ammar_akel@nablilaw.com; kborollossy@enjoy-eg.com
**Subject:** :Mira Stock 12-03-2008]


 Mark.

I am confused about your answer. I only asked you to confirm your acceptance of the new prices.  I understand your order as to quantity etc….

Please confirm.

Thank you.

---

**From:** Mark Awadalla [mailto:mark.awadalla@mirafoods.com]
**Sent:** Tuesday, March 18, 2008 2:37 PM
**To:** wsherbini@enjoy-eg.com; 'Joseph Awadalla'
**Cc:** 'El Jim'; ammar_akel@nablilaw.com
**Subject:** RE: Mira Stock 12-03-2008

Walid,

We confirm the prices subject to our purchase order.

Thank you.

---

**From:** wsherbini@enjoy-eg.com [mailto:wsherbini@enjoy-eg.com]
**Sent:** Tuesday, March 18, 2008 2:38 PM
**To:** Joseph Awadalla; Mark Awadalla
**Cc:** El Jim; ammar_akel@nablilaw.com
**Subject:** RE: Mira Stock 12-03-2008


**Dear Mark &Joe**
**I received your latest inquiry for P.O. No. 8072 for Mira. Please note that before I can advise you as to what can be shipped immediately, this email is a second reminder that this order is subject to the new prices in the attachment and which went into effect March 9, 2008.**
**I would like you to confirm your acceptance of these prices before I can process the order and answer your questions.**
**Thank you**

**Waleed El Sherbini**

**From:** Mark Awadalla [mark.awadalla@mirafoods.com]
**Sent:** 31 م ٤:٠٧ ٢٠٠٨ مارس،     3/31/2008
**To:** wsherbini@enjoy-eg.com
**Cc:** 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla'
**Subject:** Proposed Price

Dear Waleed:

Per my discussion with you earlier this morning regarding the pending order, I am attaching the proposed price increase that we can accept. Please discuss this matter with me. We intend to continue to work with Enjoy; in a way that is mutually beneficial, we do need however some accommodation on price, which better reflects prevailing price in Egypt. Many thanks.

Kind regards,

Mark



Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

**Waleed El Sherbini**

| | |
|---|---|
| **From:** | Mark Awadalla [mark.awadalla@mirafoods.com] |
| **Sent:** | 01 أبريل، ٢٠٠٨ ١١:٢٦ ص  4|01|2008 |
| **To:** | wsherbini@enjoy-eg.com |
| **Cc:** | 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla' |
| **Subject:** | Pricing |

Dear Waleed:  Kindly advise on the issue of pricing so we can move forward together.  Please try to meet us half-way.  I would like to process this order prior to my arrival in Egypt.  Thanks.


cid:image001

Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

## Waleed El Sherbini

**From:**   Mark Awadalla [mark.awadalla@mirafoods.com]
**Sent:**   01 م ١٢:٢٤ ،٢٠٠٨ أبريل، 4/6/1/2008
**To:**   'Waleed El Sherbini'
**Cc:**   'Jim El Nabli, Esq.'; ammar_akel@nablilaw.com; kborollossy@enjoy-eg.com; 'Joseph Awadalla';
          'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla'
**Subject:** RE: Proposed Price

Dear Waleed:  We respectfully disagree that Nile Company for Food Industries has followed the
terms of the contract; but nonetheless will continue our relationship for the time being in an effort to
resolve our differences in good faith.

Best regards,

Mark

**From:** Waleed El Sherbini [mailto:wsherbini@enjoy-eg.com]
**Sent:** Tuesday, April 01, 2008 6:08 AM
**To:** 'Mark Awadalla'
**Cc:** 'Jim El Nabli, Esq.'; ammar_akel@nablilaw.com; kborollossy@enjoy-eg.com
**Subject:** RE: Proposed Price

Dear Mark,

Unfortunately, we can't agree to any price reductions. We followed the terms of the contract and we have
passed the 90 days notice requirement. We cannot accept you coming after the fact to renegotiate what is
already in effect. If you wish to renegotiate other terms of the contract in exchange for a price reduction we
might consider that option.
Regardless, our prices are NOT more than the prevailing prices for our Products in Egypt. This is actually the
first price increase in 10 years which we think is very reasonable.

Thank you,

Waleed

**From:** Mark Awadalla [mailto:mark.awadalla@mirafoods.com]
**Sent:** Monday, March 31, 2008 4:07 PM
**To:** wsherbini@enjoy-eg.com
**Cc:** 'Joseph Awadalla'; 'Mariam Gandour'; 'Pancy Awadalla'; 'Ramses Awadalla'
**Subject:** Proposed Price

Dear Waleed:

Per my discussion with you earlier this morning regarding the pending order,  I am attaching the
proposed price increase that we can accept.  Please discuss this matter with me.   We intend to
continue to work with Enjoy; in a way that is mutually beneficial, we do need however some
accommodation on price, which better reflects prevailing price in Egypt.  Many thanks.

Kind regards,

Mark



Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

**Waleed El Sherbini**

| | |
|---|---|
| **From:** | Mark Awadalla [mark.awadalla@mirafoods.com] |
| **Sent:** | 01 م ۱۲:۰۹ ۲۰۰۸ ،أبريل  4/01/2008 |
| **To:** | 'Waleed El Sherbini' |
| **Cc:** | 'Jim El Nabli, Esq.'; ammar_akel@nablilaw.com; kborollossy@enjoy-eg.com |
| **Subject:** | RE: Proposed Price |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Dear Waleed:  Please process and ship this order at the prices you submitted.  Thanks.

cid:image001

Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

**Waleed El Sherbini**

| | |
|---|---|
| **From:** | Mark Awadalla [mark.awadalla@mirafoods.com] |
| **Sent:** | 02 م ٢٠٠٨، أبريل ٠٤:٥٣    4/02/2008 |
| **To:** | 'Waleed El Sherbini' |
| **Cc:** | Joseph Awadalla |
| **Subject:** | Purchase Order |

Dear Waleed: Pursuant to our conversation, attached please find the Purchase Order with the prices.   You can process the purchase order at such prices.  Thanks.



Mark R. Awadalla
Executive Vice President
Mira International Foods, Inc.
11 Elkins Road
East Brunswick, NJ 08816
Tel:   732.613.7201
Fax:   815.572.0833
Cell:  201.233.5256

|  | MIRA PRICES 08 | | Local prices 08 Whole saler $ |
|---|---|---|---|
| SKU'S | PRICE/CARTON | | PRICE/CARTON |

**1TL T.PAK**

| | | | |
|---|---|---|---|
| Mango | 8 | | 10.10 |
| Cocktai | 7.50 | | 9.60 |
| Guava | 7.50 | | 9.60 |
| P.Guava | 7.50 | | N/A |
| mangocolada | 7.50 | | N/A |
| mangobanana | 7.50 | | N/A |
| Pear | 7.50 | | N/A |

**200ml t.pak**

| | | | |
|---|---|---|---|
| Mango | 4.50 | | 6.00 |
| Cocktail | 4.25 | | 5.60 |
| Orange | 4.25 | | 5.60 |
| Guava | 4.25 | | 5.60 |
| P.Guava | 4.25 | | N/A |

**1lt. Bottle**

| | | | |
|---|---|---|---|
| mango | 4.25 | | 4.05 |
| guava | 4.00 | | 3.80 |
| p.guava | 4.00 | | N/A |
| apricot | 4.00 | | N/A |
| pear | 4.00 | | N/A |
| mangocolada | 4.25 | | N/A |
| mangobanana | 4.25 | | N/A |

**250ml.x 20bottle**

| | | | |
|---|---|---|---|
| mango | 4.5 | | 2.4 | 250ml.x12bottles |
| guava | 4.25 | | 2.25 | 250ml.x12bottles |
| p.guava | 4.25 | | N/A | |
| apricot | 4.25 | | N/A | |
| pear | 4.25 | | N/A | |
| mangocolada | 4.50 | | N/A | |
| mangobanana | 4.50 | | N/A | |

# EVERGREEN LINE

A Joint Service Agreement consisting of Evergreen Marine Corp. (Taiwan) Ltd.,
Italia Marittima S.p.A., Evergreen Marine (UK) Ltd. and Evergreen Marine (Hong Kong) Ltd.

**SEA WAYBILL**
**NON-NEGOTIABLE**

| | |
|---|---|
| **(2) Shipper / Exporter**<br>I SALES GROUP, INC.<br>4474 WESTON ROAD #147<br>DAVIE FL U.S.A. 33331 | **(5) Document No.**<br>88151682 |
| | **(6) Export References**<br>REF: 188-08 |
| Shipper code | |

| | |
|---|---|
| **(3) Consignee (complete name and address)**<br>AL SHARIF BROS<br>VIA BOUZZI #21, PST20090<br>DI PIERVE EMANAILE<br>MILAN, ITALY<br>TEL:393356270436 | **(7) Forwarding Agent-References (Name/Address/FMC #)** FMC 3038  F<br>E & E INTERNATIONAL, INC.<br>201 SEVILLA AVENUE, SUITE 306<br>CORAL GABLES,FL 33134<br>TEL: 1-305-4614318 |

| | |
|---|---|
| **(4) Notify Party (complete name and address)**<br>AL SHARIF BROS<br>VIA BOUZZI #21, PST20090<br>DI PIERVE EMANAILE<br>MILAN, ITALY<br>TEL:393356270436 | **(8) Point and Country of Origin (for the Merchant's reference only)** |
| | **(9) Also Notify Party (complete name and address)** |
| Notify code | |

| | |
|---|---|
| **(12) Pre-carriage by** | **(13) Place of Receipt/Date**<br>MIAMI, FL | This Sea Waybill is issued at the request and for the convenience of the Merchant, but is nevertheless subject to the terms and conditions of the Carrier's standard long form Bill of Lading for this trade which may be viewed online at [http://www.evergreen-line.com] or a copy obtained from the Carrier or its agents. |
| **(14) Ocean Vessel/Voy. No.**<br>CMA CGM ALABAMA GX430E | **(15) Port of Loading**<br>MIAMI, FL | **(10) Onward Inland Routing/Export Instructions (for the Merchant's reference only)** |
| **(16) Port of Discharge**<br>GENOA | **(17) Place of Delivery**<br>GENOA | |

**Particulars furnished by the Merchant**

| (18) Container No. And Seal No. Marks & Nos. | (19) Quantity And Kind of Packages | (20) Description of Goods | (21) Measurement (M³) Gross Weight (KGS) |
|---|---|---|---|
| CONTAINER NO./SEAL NO.<br>GVCU4120737/<br>0006125    /<br><br>NO MARKS | | NO SED REQUIRED AES XTN<br>592639847-188-08 ITN<br>X2008041704S237<br>1 40' CONTAINER SLAC<br>2096 CASES<br>LA VI MANGO JUICE<br>NET WEIGHT: 27,668 LBS / 12,550 KGS<br>TOTAL OF 20 - PALLETS W/2096 CASES | 43,344.000 LBS<br>19,661.000 KGS<br><br><br>"OCEAN FREIGHT COLLECT"<br>SHIPPER'S LOAD & COUNT |
| | | THESE COMMODITIES, TECHNOLOGY AND SOFTWARE, WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED.<br><br>**SAY TOTAL:    1 X 40' ONLY** | **(23)**<br>Declared Value $<br>If Merchant enters actual value of Goods and pays the applicable ad valorem tariff rate. Carrier's package limitation shall not apply. |

| (22) TOTAL NUMBER OF CONTAINERS OR PACKAGES (IN WORDS) | | |
|---|---|---|

| (24) FREIGHT & CHARGES | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| | | | | |
|---|---|---|---|---|
| **(25) Waybill No.**<br>EGLV<br>417881516821 | **(27) Number of Original Waybills**<br>NIL (0) | **(29) Prepaid at** | | **(30) Collect at**<br>DESTINATION |
| **(26) Service Type/Mode**<br>FCL/FCL D/O | **(28) Place and Date of Issue**<br>CHARLESTON, SC APR.25,2008 | **(31) Exchange Rate** | | **(32) Exchange Rate** |
| | **(33) Laden on Board**<br>APR.25,2008<br>CMA CGM ALABAMA GX430E<br>MIAMI, FL | **EVERGREEN SHIPPING AGENCY (AMERICA) CORPORATION**<br>As agent for the Carrier and the Vessel Provider Italia Marittima S.p.A.<br>doing business as "Evergreen Line" | | |

FORM NO. DOC-I-006-00

**INSPECTORATE**

# VISIT AT MIRA FOODS

I visited Mira Foods along with Mr. Ray Quigley on October 24th 2007 at 1100 hrs and was received by Mr. Mark Awadalla (Executive VP of Mira Foods). Since we already had an appointment and Mr. Mark was aware of our visit today we were immediately taken to the warehouse where juice shipment was present (Lot No. 51 / 228 – 07) (IMG_1 and 10).

There were 18 pallets and each pallet had 60 cartons and each carton contained juice bottles, hence total juice bottles were 10,800. Mr. Mark already had separated 5 pallets saying that these all have separation problem and labeled as 'Damaged Separation' (IMG_2 and 10) and rest of the pallets he stated were good, which upon asking if are acceptable he said he has a problem as he thinks these will separated at a later date and will be a problem.

We started conducting inspection of 10% (60 juice bottles) in each pallet and found the results as follows (No. of bottles mentioned are the ones with separation problem),

Pallets with separation problem (Broken out by Mr. Mark)

| Pallets No | No. of bottles |
|------------|----------------|
| Pallet - 1 | 37 |
| Pallet – 2 | 56 |
| Pallet – 3 | 36 |
| Pallet – 4 | 28 |
| Pallet – 5 | 32 |

Pallets without separation problem (Were OK per Mr. Mark but was not accepted)

| Pallets No | No. of bottles | Pallets No | No. of bottles |
|------------|----------------|------------|----------------|
| Pallet – 6 | 0 | Pallet – 13 | 2 |
| Pallet – 7 | 0 | Pallet – 14 | 0 |
| Pallet – 8 | 0 | Pallet – 15 | 0 |
| Pallet – 9 | 0 | Pallet – 16 | 0 |
| Pallet – 10 | 3 | Pallet - 17 | 11 |
| Pallet – 11 | 0 | Pallet - 18 | 2 |
| Pallet – 12 | 0 | – | – |

According to Mr. Mark all the juice bottles were not accepted for selling and displaying it on shelf as the pulp was separating and no one would buy it. I suggested to him that in juices with pulp, this kid of separation occurs over a period of time specially when they are sitting for a while and shacking the bottles is a very common practice with every consumer. Juice was received by Mira Foods on September 25th 2007 which was one month sitting at Mira Foods and then we add the time since it was shipped from Egypt will give us an answer of why the separation occurred but Mr. Mark was adamant on the theory that this juice is of no use to him now and no shacking of bottle would do any good in fact he mentioned that a very aggressive shake is required in order to mix the pulp with juice which again he said will not last for long.

1

As an evidence we took three bottles (with worst separation problem – IMG_8) and shook them all (a regular shake as we do for all juices at home as a normal practice) and noted the time of shake and left the bottled untouched. The bottles were then observed after we completed the entire inspection (approximately more than 3 hours – IMG_9) and there was no separation and juice was perfectly fine for selling and consumption.

As I mentioned Mr. Ray Quigley was accompanying me and he was an ex-supervisor in a beverage warehouse and been dealing with these shipments on a daily basis, he also agreed that this kind of separation in a mango colada juice is a normal thing and a normal shake is sometime required sometime not. In fact all the bottles were clearly labeled with the sentence 'Shake Well'.

Two bottles from each pallet (separation problem and no separation problem) were taken as a sample which I am holding with me as evidence and will retain until the matter is resolved.

Later that day I visited a local grocery store I noted a Mitchell's mango squash (only liquid and no pulp) had a small amount of sediment in the bottom and was on the shelf ready to be sold, my point is when a liquid like this squash with no pulp can show a small sediment in the bottom, a mango juice with pulp showing a separation is completely normal, a picture was taken of the mango squash bottles which is enclosed (IMG_5).

It is our opinion the juice bottles are good for selling and consumption and pulp in this case would separate as heavier product will settle at the bottom which is easily mixed up with a regular shake. Just for the fact that while pulp is separated the bottle doesn't look pretty doesn't mean it's not good for selling or consumption.

Thank you for choosing Inspectorate America Corporation and we hope to hear from you in the future. Hoping everything is in order and please do not hesitate to ask if you have any question.


Investigated by,
Captain Sohail Anwar

Dated: October 25th 2007

INSPECTORATE

# VISIT AT MIRA FOODS

I visited Mira Foods along with Mr. Ray Quigley on November 8, 2007 at 1030 hrs and was received by Mr. Mark Awadalla (Executive VP of Mira Foods). Since we already had an appointment and Mr. Mark was aware of our visit today we were immediately taken to the warehouse where juice shipment of Mango Colada was present (Lot No. 51 / 228 – 07) **(IMG_1).**

As per the job description there were supposed to be 834 cases (close to 8 pallets) but once we reached the warehouse we found there were only 7 pallets and each pallet had 60 cases and each case contained 6 juice bottles of Mango Colada, hence total juice bottles were 4,200. Mr. Mark explained that 1 pallet is being send out to their client which they will try to get it back and add it to the original lot.

Bottles with separation problem (in the above 7 pallets) were not separated by Mira Food staff hence the entire lot was sitting there and was received by Mira Foods on October 25th 2007.

All the bottles without separation problem Mr. Mark said may become a problem at a later stage so are currently looks ok but not acceptable for putting on the shelf.

We started conducting inspection of 10% (60 juice bottles – Mango Colada) in each pallet and found the results as follows (No. of bottles mentioned are the ones with separation problem),

Pallets with separation problem

| Pallets No | No. of bottles |
|------------|----------------|
| Pallet - 1 | 0 |
| Pallet – 2 | 0 |
| Pallet – 3 | 1 |
| Pallet – 4 | 2 |
| Pallet – 5 | 12 |
| Pallet – 6 | 4 |
| Pallet – 7 | 0 |
| Pallet – 8 | Not Present |

According to Mr. Mark all the juice bottles were not accepted for selling and displaying it on shelf as the pulp was separating and no one would buy it. I suggested to him that in juices with pulp, this kind of separation occurs over a period of time specially when they are sitting for a while and shacking the bottles is a very common practice with every consumer. Juice was received by Mira Foods on October 25th 2007 **(IMG_5)** which was two weeks sitting at Mira Foods and then we add the time since it was shipped from Egypt will give us an answer of why the separation occurred but Mr. Mark was adamant on the theory that this juice is of no use to him now and no shacking of bottle would do any good in fact he mentioned that a very aggressive shake is required in order to mix the pulp with juice which again he said will not last for long.

1

As an evidence we took three bottles (with worst separation problem – **IMG_2 & 3**) and shook them all (a regular shake as we do for all juices at home as a normal practice **MVI_1**) and noted the time of shake and left the bottled untouched. The same bottles were taken as a sample (with Mr. Mark's permission) and for many hours the bottles were without any separation and juice was perfectly fine for selling and consumption (**IMG_4**).

As I mentioned in my previous report that Mr. Ray Quigley was an ex-supervisor in a beverage warehouse and been dealing with these shipments on a daily basis, he again agreed that this kind of separation in a mango colada juice is a normal thing and a normal shake is sometime required sometime not. In fact all the bottles were clearly labeled with the sentence '*Shake Well*'.

It is our opinion the juice bottles are good for selling and consumption and pulp in this case would separate as heavier product will settle at the bottom which is easily mixed up with a regular shake. Just for the fact that while pulp is separated the bottle doesn't look pretty doesn't mean it's not good for selling or consumption.

Thank you for choosing Inspectorate America Corporation and we hope to hear from you in the future. Hoping everything is in order and please do not hesitate to ask if you have any question.


Investigated by,
Captain Sohail Anwar

Dated: November 8, 2007